UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHANADA ROBINSON, for herself and as next of friend/next of kin for Anthony Thompson Jr., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )  No. 3:22-cv-125-CEA-JEM ) |
| OFFICER BRIAN BALDWIN, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and the Order [Doc. 151] referring the matter by United States District Judge Charles E. Atchley, Jr.

Now before the Court is Defendants' Joint *Daubert* Motion as to Plaintiff's Expert Dr. James Wilson, M.D. [Doc. 148]. Plaintiff responded in opposition to the motion [Doc. 153], and Defendants filed a reply [Doc. 155]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a).

For the reasons set forth below, the Court **GRANTS** Defendants' motion [**Doc. 148**].

## I. BACKGROUND

On April 11, 2022, Plaintiff Chanada Robinson ("Plaintiff Robinson") and Mr. Gralyn Strong ("Mr. Strong") commenced this action by filing a Complaint [Doc. 1], and later, on July 28, 2022, they filed an Amended Complaint [Doc. 31]. Plaintiff Robinson is the mother of Anthony J. Thompson, Jr. ("Mr. Thompson") [*id*. ¶ 6], who was involved in an incident at East Austin Magnet High School ("Austin East") that ended his life on April 12, 2021 [*see* Doc. 31]. Plaintiff Robinson and Mr. Strong named as Defendants the City of Knoxville; officers with the

Knoxville Police Department ("KPD"), Brian Baldwin ("Defendant Baldwin"), Stanley Cash ("Defendant Cash"), and Jonathon Clabough ("Defendant Clabough") (collectively, "Defendants"); and the School Resource Officer, Adam Willson ("Officer Willson") [*See id.*]. With respect to the Defendants, Plaintiff Robinson and Mr. Strong alleged violations of the Fourth Amendment, deliberate indifference to Mr. Thompson's medical needs, assault and battery, and intentional infliction of emotional distress [*Id.* ¶¶ 143–62].

On September 28, 2023, Judge Atchley granted summary judgment in favor of Defendants and Officer Willson [Doc. 112]. Plaintiff Robinson and Mr. Strong requested that the Court reconsider its decision, but the Court denied that request [Doc. 125]. Later, the Court granted summary judgment to Defendant City of Knoxville [Doc. 127] and closed the matter [Doc. 128]. On February 26, 2024, Plaintiff Robinson and Mr. Strong appealed the case to the United States Court of Appeals for the Sixth Circuit [Doc. 129]. The Sixth Circuit rendered its decision on February 26, 2025. *Robinson v. City of Knoxville*, No. 24-5159, 2025 WL 621451 (6th Cir. Feb. 26, 2025). In recounting the facts, the Sixth Circuit noted that "On April 21, 2021[,] Regina Perkins called 911 to report an altercation between her teenage daughter, Alexus Page, and her daughter's teenage boyfriend, [Mr.] Thompson, at Austin East[.]" *Id.* at *1. Defendant Clabough visited Alexus Page ("Ms. Page") and Regina Perkins at their home to talk to them about the incident, and they reported that Mr. Thompson was physical with Ms. Page. *Id.* They also reported that Mr. Thompson was known to have a gun. *Id.* Defendant Clabough contacted Officer Willson, who stated "that the school was attempting to locate video footage of the incident between [Mr.] Thompson and [Ms.] Page." *Id.*

Later, Defendants visited Austin East and met Officer Willson. *Id.* at *2. They watched the surveillance footage of Mr. Thompson and Ms. Page, and it depicted "[Mr.] Thompson pulling

[Ms.] Page by her shirt, grabbing her hair, and cornering her against the wall." *Id*. Officer Willson and Defendants located Mr. Thompson in a stall of the school bathroom. *Id*. After Officer Willson and Defendant Baldwin instructed Mr. Thompson to stand up, "[Mr.] Thompson placed his hands in his pockets and stood up from the toilet." *Id*. "Officer Willson ordered [Mr.] Thompson twice to keep his hands out of his pockets." *Id*. Defendant Baldwin and Officer Willson then took hold of Mr. Thompson's arms. *Id*.

The Sixth Circuit stated, "From this point, the events in the bathroom unfolded rapidly and with some degree of uncertainty." *Id*. (footnote omitted). It described:

> A struggle ensued between Thompson and the Officers holding him. The body cameras of Officer Baldwin and Officer Cash detached and fell to the ground. Officer Willson reached into Thompson's pocket while Baldwin continued to restrain him. During the struggle, Thompson's gun fired and hit the trashcan beside Officer Baldwin, while Thompson screamed, "Wait, wait, wait, wait!" Roughly four seconds later, Officer Clabough fired his gun at Thompson, who fell to the ground. Willson climbed on top of Thompson, who was still moving. Clabough fired a second shot at Thompson but mistakenly hit Willson.

*Id*.

After Defendant Clabough fired the second shot, "[Mr.] Strong . . . emerged from another bathroom stall and came up behind [Defendant] Clabough." *Id*. "Meanwhile, [Defendant] Cash handcuffed [Mr.] Thompson, who remained on the ground." *Id*. Defendant Baldwin pulled Officer Willson into the hallway, and "[Defendant] Cash radioed for help[.]" *Id*. The Sixth Circuit commented that "[s]omeone . . . offered [Officer] Willson a tourniquet at least three times[,]" while "[Mr.] Thompson remained on the floor beside a puddle of blood[.]" *Id*. "[Defendant] Cash rolled [Mr.] Thompson over, saw the extent of the wound, and exclaimed, 'Step it up!'" *Id*. (citation omitted). Later, "a female nurse arrived and began examining [Mr.] Thompson, and [Defendant]

3

Cash observed [Mr.] Thompson still breathing." *Id*. A female officer also began attending to Mr. Thompson until the EMS personnel arrived. *Id*. Mr. Thompson, however, was deceased. *Id*.

The Sixth Circuit affirmed the Court's ruling as to all claims, except it remanded "Plaintiff Robinson's denial-of-medical care claim against Defendants Baldwin, Cash, and Clabough[.]" *Id*. at *12.

After the Court reopened the matter, on September 2, 2025, Plaintiff filed the Expert Witness Report of James Wilson, M.D. [Doc. 138-1]. According to James Wilson, M.D. ("Dr. Wilson"), "[t]he purpose of [his] report is to assess the physical and psychological impact upon [Mr.] Thompson when he was denied medical care following being shot in the chest at close range by [Defendant] Clabough" [*Id*. at 1]. He characterizes his analysis as:

> (a) describing the standard of care attributable to first responders performing triage duties at the scene of a shooting; (b) describing the duration of time when [Mr.] Thompson was shot and when he lost consciousness as it relates to the duration of the time he suffered; and (c) describing the intensity of the physical and psychological suffering persons who have been shot but do not receive timely medical attention as they lay dying.

[*Id*. at 2–3].

Dr. Wilson relies on his experience, consultation with another physician, and his review of textbooks and articles to render his opinions [*Id*. at 4–7]. With respect to his experience, he is an emergency physician certified by the American Board of Emergency Medicine and the American Board of Forensic Medicine [*Id*. at 4]. He has been an instructor of Advance Trauma Life Support and an assistant professor of emergency medicine [*Id*. at 4–5]. "During the course of [his] 29-year career, [he has] treated more than 500 gunshot wound victims" [*Id*. at 5]. In addition to his experience, he "consulted with a palliative care physician, Dr. Martin Payne, who is a former paramedic and is board certified in both Emergency Medicine and Palliative Care Medicine" [*Id*.].

4

He also "relied on well validated textbooks of emergency medicine and trauma" [*id*.] and several articles [*Id*. at 5–7].

Dr. Wilson offers two findings: (1) "[l]aw [e]nforcement officers failed to provide appropriate and timely medical care to Mr. Thompson" ("Finding No. 1"); and (2) "[t]he failure to provide medical care to Mr. Thompson caused unnecessary pain and suffering in addition to what he suffered from the gunshot wound itself" ("Finding No. 2") [*Id*. at 7 & 10].

With respect to his first opinion, Dr. Wilson states that "[o]ne of the foundational principles of field triage is to provide medical care to the most seriously injured patient first" [*Id*. at 7]. If the injury is survivable, Dr. Wilson explains that "lifesaving interventions [are] designed to improve the patients' probability of survival" [*Id*.]. If the injury is not survivable, he submits that "these interventions are designed to provide analgesia and anxiolysis to the dying" [*Id*.].

According to Dr. Wilson, "Mr. Thompson's gunshot wound to the chest would be considered immediately life threatening and therefore of the highest priority, while Officer Willson's gunshot wound to the leg would be of secondary importance for triage purposes" [*Id*. at 8]. Dr. Wilson represents that the evidence shows that Officer Willson was provided medical care first [*Id*.]. "The failure to provide any triage assistance of medical care to Mr. Thompson first represents a violation of the applicable standard of care for first responders such as the individual officers in this case" [*Id*.].

Specifically, Dr. Wilson opines that "[Defendant] Clabough decline[d] to attend [to Mr.] Thompson entirely and instead stayed with Plaintiff Strong for the duration of the incident, even after handcuffing [Plaintiff] Strong and establishing that he was not armed" [*Id*. at 8]. He further states:

> The standard of care for first responders, including law enforcement officers, requires them to render aid to the most seriously injured

5

> people first, then to less seriously injured people. They may need to secure the scene for safety, but once the scene is safe, then they are required to immediately render aid. First responders such as law enforcement are required to render that aid to the extent of their training. This may include taking measures to curtail bleeding, assist with breathing, and treat pain and anxiety. [Defendant Clabough] is a police officer and is therefore considered a first responder, bound by this standard of care. He secured the scene by placing [Mr.] Grayln [Strong] in handcuffs. Yet after securing the scene, [Dr. Wilson] could find no evidence that [he] rendered any aid to Mr. Thompson. His failure to render aid consistent with his training represents a breach in the standard of care for a first responder.

[*Id*. at 8].

With respect to Defendants Cash and Baldwin, Dr. Wilson relies on the facts articulated by the Sixth Circuit [*Id*. at 9]. He concludes that they "would have been bound to this same standard of care as [Defendant] Clabough" and that their "failure to render aid consistent with [their] training represents a breach in the standard of care for a first responder" [*Id*.].

As to Finding No. 2, Dr. Wilson describes that Mr. Thompson did not receive timely medical care and that had he received such care, his "pain would have been alleviated or at least controlled" [*Id*. at 10–11]. He notes, "The facts of this case show that while Officer Willson received immediate care from first responders and EMT[]s, presumably including pain management, while Mr. Thompson received nothing" [*Id*. at 11].

Defendants move to exclude Dr. Wilson's opinions pursuant to Rule 702 of the Federal Rules of Evidence [Doc. 148]. They contend that Dr. Wilson cannot offer an opinion about any breach of standard of care because (1) it is a legal conclusion, (2) he is not qualified to offer an opinion about the conduct of law enforcement officers, and (3) his opinion is not reliable [Doc. 149 p. 1]. As to the third ground, Defendants argue that Dr. Wilson's opinions are not reliable because (1) "he is equating a law enforcement's standard of care with that of the standard of care

6

Case 3:22-cv-00125-CEA-JEM   Document 160   Filed 12/29/25   Page 6 of 13
PageID #: 2383

of EMS personnel[,]" and (2) "he relies on a blatantly false factual assumption about the arrival of and treatment of EMS personnel" [*Id*. at 2].

Plaintiff responds that Dr. Wilson is qualified to testify [Doc. 153]. She states that the Sixth Circuit has identified the relevant question and that Dr. Wilson is qualified to render his opinions on that question [*Id*. at 1]. She contends that he "does not necessarily need to be a first responder himself, but he must have familiarity with the applicable standard of care for first responders" [*Id*. at 2 (citations omitted)]. She submits an Affidavit of Dr. James Wilson to support her argument [Doc. 154].

Defendants reply that Plaintiff failed to address their arguments "that (1) Dr. Wilson's opinion testimony should be barred because it represents legal conclusions[,] and (2) because he relies on blatantly false facts" [Doc. 155 p. 3]. As such, they assert, Plaintiff "has waived any arguments to the contrary" [*Id*.]. Further, Defendants state that "Dr. Wilson's opinion is fundamentally flawed because it erroneously presumes that a single uniform standard of care applies to all 'first responders'" [*Id*. at 2]. Relatedly, they claim that "Dr. Wilson's opinions as to the KPD individual defendants are not within the scope of his specialized knowledge" [*Id*.].

**II.     STANDARD OF REVIEW**

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

7

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70–71 (quoting *Daubert*, 509 U.S. at 593–94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers

8

many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

## III. ANALYSIS

The Court finds Plaintiff has not established that Dr. Wilson is qualified to render an opinion about the standard of care for law enforcement officers. The Court finds Plaintiff has conceded that Dr. Wilson's opinion that Defendants breached the standard of care is a legal conclusion and is otherwise unreliable. But in the alternative, the Court finds that it is a legal conclusion that is unreliable.

### A. Qualifications

Defendants argue that Dr. Wilson cannot offer any opinion about the breach of standard of care because he is not qualified to provide an opinion about the conduct of law enforcement officers [Doc. 149 pp. 11–12]. While Dr. Wilson is a "doctor who practices as an emergency room physician[,]" Defendants claim that his "work history does not include any law enforcement experience, education, or training" [*Id.* at 11]. "Because of this lack of experience with law enforcement," Defendants assert, "Dr. Wilson should not be permitted to provide opinions about whether [Defendants] . . . breached some standard of care" [*Id.*].

Plaintiff responds that Dr. Wilson is qualified to testify to the question posed by the Sixth Circuit—that is, "Whether the individual officers deliberately or reckless disregarded an obvious and unjustifiably high risk of harm to [Mr.] Thompson by not doing more to provide basic first aid, and by engaging in other non-urgent activities, however, brief, that did not further this goal?" [Doc. 152 p. 1 (citation omitted)]. According to Plaintiff, Dr. Wilson is familiar with the applicable standards of first responders, although he is not a first responder [*Id.* at 2 (citations omitted)]. She outlines his education and experience [*id.* at 2–3; *see also* Doc. 154] and concludes that "he has

9

Case 3:22-cv-00125-CEA-JEM    Document 160    Filed 12/29/25    Page 9 of 13
PageID #: 2386

relevant knowledge [that] will be helpful to the trier of fact in assessing whether the individual officers should have done 'more to provide basic first aid'" [Doc. 152 pp. 3–4].

Defendants reply that "Dr. Wilson should be excluded from providing opinion testimony related to the[ir] conduct . . . because he is not qualified" [Doc. 155 p. 1]. Although Plaintiff claims "that Dr. Wilson is qualified to provide certain opinion testimony about 'first responders' generally," Defendants argue that he does not have "any specialized knowledge, training, or experience about the role of law enforcement officers" [*Id.*].

Rule 702 requires that experts have "knowledge, skill, experience, training, or education[.]" Fed. R. Evid. 702. The Sixth Circuit has explained that "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). "[Courts] take a liberal view of what 'knowledge, skill, experience, training, or education' is sufficient to satisfy the requirement." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015) (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)).

Dr. Wilson opines that the individual Defendants "failed to meet the standard of care for first responders interacting with a gunshot victim" [Doc. 138-1 p. 4]. Plaintiff outlines Dr. Wilson's educational and experience, which includes experience with first responder triage and teaching about the standard of care for first responders [Doc. 154 ¶¶ 3 & 9]. But Plaintiff has not provided any evidence that Dr. Wilson is qualified to testify about the standard of care as it relates to a law enforcement officer. *See Nale v. Finley*, 505 F. Supp. 3d 635, 645 (W.D. La. 2020) ("Although Nurse Wild has a specialized knowledge in the field of correctional health care, she fails to show how she has any specialized knowledge of the standards or guidelines of correctional

officers—Nurse Wild has no experience or training as a law enforcement officer or as an officer at a correctional facility. Thus, she is unqualified on this issue and her testimony on this matter is excluded."). This supports Dr. Wilson's exclusion.

### B. Legal Conclusion

Defendants assert that Dr. Wilson cannot offer an opinion that they breached the standard of care because that is a legal conclusion [Doc. 149 p.10]. While an expert's opinion may embrace an ultimate issue, Fed. R. Evid. 704(a), an expert may not render legal conclusions, *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) (explaining that "[a]n expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case" (citation omitted)). A legal conclusion is not helpful to the jury because it merely instructs the jury what verdict to reach. *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). "[It also] convey[s] the witness' unexpressed, and perhaps, erroneous, legal standards to the jury." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

Plaintiff does not respond to this argument. Given that, the Court finds it unopposed and the proposition conceded. *AK v. Behav. Health Sys., Inc.*, 382 F. Supp. 3d 772, 774 (M.D. Tenn. 2019) (explaining that under case law "when a party fails to respond to an argument, that argument is generally deemed to be unopposed and the proposition conceded"); *see also Jarvis v. Hamilton Cnty. Dep't of Educ.*, No. 1:17-CV-00172, 2019 WL 1368618, at *9 (E.D. Tenn. Mar. 26, 2019) ("Having failed to address this argument in their brief, they have waived opposition to it" (citation and footnote omitted)).

Even so, other courts have excluded similar testimony, finding it a legal conclusion. *See Jordan v. Town of Fairmount Heights*, No. 8:22-CV-02680, 2024 WL 732011, at *4 (D. Md. Feb. 21, 2024) (precluding the expert from opining that the officer breached the applicable standard of care because it was a legal conclusion); *cf. Roe v. Patterson*, No. 4:19-CV-179,

11

2022 WL 987814, at *3 (E.D. Tex. Mar. 31, 2022) (finding that the expert's conclusion that the defendant "met its 'standard of care' [was] an inadmissible legal conclusion" (citation omitted)). To the extent the argument is not conceded, the Court would exclude it here for the same reason.

### C. Reliability

Defendants argue that Dr. Wilson's opinion that they "breached the standard of care by not providing pain medication or by not ensuring that the paramedics (allegedly at the scene) gave pain medications to [Mr.] Thomspon" is unreliable [Doc. 149 p. 13 (citation omitted)]. Defendants claim that Dr. Wilson relied on the Sixth Circuit's false assumptions "about when the paramedics arrived" and that he "also made the false assumption that paramedics were present in the time that Officer Willson was outside the bathroom door and before the personnel from the Fire Department came into the bathroom" [*Id*. at 14]. They ask that Dr. Wilson be "excluded from providing opinion testimony that the . . . [D]efendants should have taken more action to ensure that the paramedics (who were allegedly there) administered pain medications" [*Id*.].

Rule 702 requires that an expert's testimony be "based on sufficient facts or data[.]" Fed. R. Evid. 702(b). Generally, "[w]here an expert bases [his] opinion on assumed facts, 'mere weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1224 (6th Cir. 2025) (quoting *In re Scrap Metal*, 527 F.3d 517, 530 (6th Cir. 2008)) (ellipses in original). Still, "[a]n expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *Id*. (quoting *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000)).

Plaintiff does not respond to Defendants' argument. Therefore, it too is unopposed and the proposition conceded. *AK*, 382 F. Supp. 3d at 774; *Jarvis*, 2019 WL 1368618, at *9.

But the Court would also exclude the opinion because it is unreliable. Dr. Wilson states that a person must be conscious to feel pain and that Mr. Thompson was conscious between 3:15:28 and 3:19:22 [Doc. 138-1 pp. 12, 16]. Defendants have submitted evidence showing that EMS personnel were not at the scene until about 3:20:30, after Mr. Thompson became unconscious, and that Officer Willson left with the assistance of KPD officers at 3:18:20 [Ex. 1 (video footage from the school hallway) & Ex. 2 (Officer Austin Jordan's body camera footage)]. *See McLean*, 224 F.3d at 800–01 ("[A]n expert's opinion must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known." (quoting *Pomella v. Regency Coach Lines, Ltd.,* 899 F. Supp. 335, 342 (E.D. Mich. 1995) (alteration in original)).[1]

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Joint *Daubert* Motion as to Plaintiff's Expert Dr. James Wilson, M.D. [**Doc. 148**].

**IT IS SO ORDERED.**

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge

---

[1] Given this finding, the Court declines to address Defendants' argument that Dr. Wilson's opinion is unreliable because he applied the wrong standard of care [*See* Doc. 149 pp. 12–13].